**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

**PAUL J. MEYERS, M.D.,**

      **Plaintiff,**

**v.**                                                                 **Civil Action No. 4:02cv9**

**CARL J. LEVINSON, M.D.,**

      **Defendant.**

<u>**ORDER and OPINION**</u>

      Pending before the court are the defendant's motion to dismiss and motion for summary judgment, each filed on May 2, 2005.  The plaintiff has responded to both motions, and they are currently ripe for judicial review.  In reviewing the materials presented by each party, the court concludes that a hearing is not necessary to resolve the issues presented in these motions.[1]  For the reasons articulated fully herein, the court **DENIES** the defendant's motion to dismiss, but **GRANTS** the defendant's motion for summary judgment.

I. Background

A. Procedural History

      This case has proceeded in fits and starts through this court since initiated over three and a half years ago.  Although much of the procedural history is not immediately relevant to the motion for summary judgment, and only partially relevant to the motion dismiss, the court

---

      [1]The defendant had initially requested that the court consider conducting oral argument on his motions; however, he has subsequently withdrawn this request and now desires the court to rule on these motions based on the filings.  The court was of the opinion, even in view of the earlier request for oral argument, that such argument was not needed.

1

provides the following overview to place these motions in the proper context.

1. Federal Proceedings

In his Complaint, filed in this court on January 31, 2002, the plaintiff, Dr. Paul J. Meyers, alleges various claims of defamation against the defendant, Dr. Carl J. Levinson, stemming from a report provided by Dr. Levinson to the Riverside Regional Medical Center ("Riverside") in Newport News, Virginia, on or about June 27, 2000.  The report prepared by Dr. Levinson involved a review of medical records of patients of Dr. Meyers incident to a peer review process initiated by Riverside resulting from a summary suspension of Dr. Meyers' clinical privileges at Riverside.  In his Complaint, the plaintiff requests compensatory damages in the amount of $1.5 million and punitive damages in the amount of $500,000.

On March 14, 2002, the defendant filed a motion to dismiss the Complaint due to the lack of personal jurisdiction.  This motion and a related motion by the plaintiff for sanctions and attorney's fees pursuant to Federal Rule of Civil Procedure 11 were referred for Report and Recommendation to a United States Magistrate Judge by an order entered on May 9, 2002.  On February 23, 2003, the magistrate judge issued a Report and Recommendation, recommending that both the defendant's motion to dismiss and the plaintiff's motion for attorney's fees and sanctions be denied.  On March 27, 2003, this court entered an order accepting and affirming the findings of facts and conclusions of law contained in the Report and Recommendation.

On July 1, 2003, the defendant filed a motion to stay this action based on the insolvency of Riverside's insurance carrier, contending that Riverside had entered into an agreement to indemnify Dr. Meyers based on any legal action stemming from his services for Riverside, including the preparation of the June 27, 2000 report.  The plaintiff did not object to this stay.

2

The court stayed this matter for six months initially, and extended the stay on two other occasions, without objection from the plaintiff, for a total of eighteen months after requiring and reviewing regular status reports from the defendant. In a status report filed on January 19, 2005, the defendant sought a third six-month extension, which the plaintiff opposed. The court, in an order entered on February 17, 2005, denied the defendant's request for an additional stay and directed the Clerk to reinstate this case on the active docket. A scheduling conference pursuant to Federal Rule of Civil Procedure 16(b) was held on March 21, 2005, and the trial in this matter was scheduled for September 7, 2005.

On May 2, 2005, the defendant filed the instant motions to dismiss and for summary judgment. The defendant's motion to dismiss argues that the plaintiff has impermissibly split his cause of action for defamation. As a result, and due to certain parallel proceedings in the Circuit Court for the City of Newport News, Virginia, the defendant contends that the court should abstain from exercising jurisdiction over this case, in reliance on the so called <u>Colorado River</u> doctrine. The motion for summary judgment is premised on the Virginia statute of limitation concerning defamation claims and the liability of an original publisher for the republication of defamatory material by a third party. The defendant claims, for reasons discussed further herein, that the plaintiff's action is time-barred and that the defendant is not liable for certain acts by Riverside in republishing his report to other entities.

As these motions were filed on the same date, the plaintiff had eleven (11) days to respond to each pursuant to the local rules of this court. <u>See</u> Loc R. 7(F) E.D. Va. On May 10, 2005, however, the plaintiff filed a motion requesting that the eleven-day time period for each motion run consecutively, for a total of twenty-two (22) days. The defendant responded with a

3

motion to strike this request, also filed on May 10, 2005.

Before the court had time to consider the plaintiff's motion to run the eleven-day time periods consecutively, the plaintiff filed his opposition brief to the motion for summary judgment on May 12, 2005. He then filed his opposition brief to the motion to dismiss on May 13, 2005. On May 17, 2005 and May 20, 2005 respectively, the defendant filed his reply memoranda to the plaintiff's opposition briefs. On May 23, 2005, the plaintiff filed a revised version of his opposition brief to the defendant's motion to dismiss. In this revised brief, the plaintiff claims that he learned on May 20, 2005 that the court had granted his motion for the eleven-day periods to run consecutively, thus giving him additional time. The plaintiff asserts that the revised version of his opposition brief contains certain citations that were left out of his initial opposition brief due to his haste in attempting to file oppositions to both of the defendant's motions in one eleven-day period.

Although the plaintiff claims that the court granted his motion for what amounted to an extension of time to submit his opposition briefs, the court finds no evidence of such an order having been entered in the record. Extensions of time require the approval of the court. After conferring with the Clerk's Office, it appears that the plaintiff has not obtained this approval. As a result, the Clerk's Office correctly noted that the May 23, 2005 revised opposition brief was filed subject to defect because leave of the court is required to file additional briefs beyond those permitted pursuant to the court's local rules. See Loc. R. 7(F)(1) E.D. Va.

From a comparative review of both the initial and revised opposition briefs to the motion to dismiss, it appears as if any revisions largely revolve around the adding of certain citations and brief elaborative commentary. Nevertheless, the court is bothered by the plaintiff's claim that

this court granted his motion for an extension of time when no evidence of such an order exists in the record.  Perhaps this was the result of a miscommunication with the Clerk's Office, and the court will not go so far as to attribute any bad faith to the plaintiff's claim that his motion for an extension of time was granted.  The court will not, however, accept the plaintiff's revised opposition brief due to the fact that leave of the court had not been granted for him to file it.  In any case, the court's decision to deny the motion to dismiss effectively moots the question of which version of the plaintiff's opposition brief should be considered.

2.  State Proceedings

The defendant's motion to dismiss relies largely on related proceedings before the Circuit Court for the City of Newport News, Virginia ("the Newport News Circuit Court"). Accordingly, it is necessary for the court to review the course of these proceedings as well.  The state proceedings certainly overlap, to some degree, with the plaintiff's federal action against the defendant because they both allege claims stemming from the same peer review action.

In October 2001, the plaintiff filed a five-count Motion for Judgment in the Newport News Circuit Court against Riverside and several other defendants ("the Riverside Action").  The plaintiff alleged actions for breach of contract, defamation, tortious interference with a contractual relationship and expectancy and statutory civil conspiracy, stemming from actions beginning in 1995 and all related to the plaintiff's relationship as a privileged physician at Riverside.  In the general allegations portion of the Motion for Judgment, the plaintiff alleged that Dr. Levinson rendered a false report to Riverside concerning the plaintiff's medical performance and judgment in certain cases.  No specific statements made in Dr. Levinson's report were listed in the specific allegations related to the plaintiff's count for defamation.

After the defendants in the Riverside Action demurred, the plaintiff filed his First Amended Motion for Judgment on July 24, 2002.  Although the general allegations again referenced a defamatory statement made in Dr. Levinson's report, this statement was not subsequently identified under the specific allegations referenced in the description of the defamation count of the First Amended Motion for Judgment.

In April 2003, the Newport News Circuit Court sustained the defendants' Demurrer to the First Amended Motion for Judgment, but granted the plaintiff leave to amend.  The plaintiff then filed his Second Amended Motion for Judgment, to which the defendants also demurred.  In view of the insolvency of Riverside's insurer, the state court defendants, as did Dr. Levinson in this action, moved the Newport News Circuit Court for a stay.  Apparently no action was taken by the Newport News Circuit Court on this motion; however, it appears that the state case became inactive, possibly in view of the stay ordered by this court around the same time period.

The Riverside Action began to proceed again in the state court after this court lifted the stay in the instant action.  The defendants endeavored to move forward with their Demurrer, but the Newport News Circuit Court granted the plaintiff's motion to amend his Motion for Judgment a third time.  On April 20, 2005, the plaintiff served his Third Amended Motion for Judgment, which dismissed one defendant and consolidated five counts into two.  Count One alleges a claim of multiple acts of defamation and Count Two alleges a claim of tortious interference with contract expectancy.  The defendant claims that the substantive factual allegations raised in Count Two of the Third Amended Motion for Summary Judgment mirror the factual allegations raised against Dr. Levinson in the instant Complaint.

The defendant has attached copies of the various Motions for Judgment in the Riverside

Action to his motion to dismiss.  The court notes that the general allegations portion of the Third

Amended Motion for Judgment does identify actions taken by Dr. Levinson that form the factual

basis for the instant federal action.  Although all of the general allegations contained in

paragraphs 1-263 of the Third Amended Motion for Judgment are incorporated by reference into

both the defamation count (Count One) and the tortious interference count (Count Two), the

specific allegations in the defamation count also allege actions taken by the Riverside defendants

that form the basis for certain of the acts of defamation alleged in the instant Complaint.  It does

not appear, as may have been confused by the defendant, that the allegations contained in the

tortious interference claim in the Third Amended Motion for Judgment overlap with the acts of

defamation alleged in the instant Complaint.

B. Factual Background

The following facts are relevant to the defendant's motion for summary judgment and are

either presented from the vantage of the plaintiff, or are not in dispute.  The facts relating to the

motion to dismiss are based less on the facts underlying this dispute and more on a comparison

of the pending state and federal lawsuits.

Dr. Meyers and Dr. Levinson are both obstetricians and gynecologists.  Dr. Meyers was

employed by Riverside and also had clinical privileges at Mary Immaculate Hospital ("MIH").

On March 1, 2000, as a result of alleged surgical complications, Dr. Meyers' privileges were

summarily suspended by Riverside, which then initiated a peer review of Dr. Meyers.  Incident to

this review, in May 2000, Riverside entered into a letter agreement with Dr. Levinson, a retired

physician residing in California, for Dr. Levinson to review selected medical records of some

thirty-one (31) patients of Dr. Meyers.  The contents of the letter agreement, which are not in

dispute, reveal that Dr. Levinson agreed to review the quality and appropriateness of care being rendered by Dr. Meyers with respect to certain patients.

Pursuant to this letter agreement, Dr. Levinson agreed to produce a report to Riverside containing case specific findings and conclusions.  This report was to be used in the peer review process concerning the status of Dr. Meyers' clinical privileges.  With respect to the confidentiality of this review and the intended use of Dr. Levinson's findings, the letter agreement stated:

> You will maintain the information obtained through this engagement in strict confidence in accordance with the protections and privileges accorded peer review activities under Virginia and federal law.  The work product of your efforts, including, but not limited to, any reports, memoranda, correspondence, and notes, shall also be privileged, strictly confidential, and used only for the purposes of the peer review activities of RRMC [Riverside], and all persons within its control shall not disclose to third parties any information gained during the course of this engagement.

In accord with the provisions of the letter agreement, Dr. Levinson completed a review of certain patient records and transmitted his report to Riverside on or about June 27, 2000.  It is the contents of this report that form the basis for the alleged acts of defamation raised in the instant case.  The plaintiff claims that Dr. Levinson's report contained numerous false statements about a number of patient cases and the applicable medical standards of care.  For the purposes of the defendant's motion for summary judgment, however, the truth or falsity of the contents of the report are not at issue.[2]

---

[2]In his opposition memorandum to the motion for summary judgment, the plaintiff presents sundry derogatory and irrelevant information about Dr. Levinson's background.  For instance, the plaintiff alleges that Dr. Levinson had not practiced medicine or performed surgery for eight years prior to entering into the letter agreement with Riverside, and had been reprimanded by various state medical boards for various ethical lapses.  While the personal and professional ethics and medical expertise of Dr. Levinson are not at issue, as the defendant seeks summary judgment on non-substantive grounds, the plaintiff has attempted to make such

Following the initial transmission of Dr. Levinson's report to Riverside on June 27, 2000, and its review by an ad hoc Investigation Committee, the report was distributed to Riverside's Medical Executive Committee, which relied on it, in part, in making a recommendation to the Riverside Board of Directors that Dr. Meyers' privileges be permanently revoked.  This recommendation was made following a July 25, 2000 meeting of the Medical Executive Committee.

In early August 2000, Dr. Levinson wrote a letter to Dr. Rudolph Freeman, Riverside's vice president of medical affairs, regarding payment for his consultative services and expressing his interest in any actions taken by Riverside based on his report.  On August 14, 2000, Dr. Freeman wrote to Dr. Levinson and informed him that his report had been of great assistance to both the Investigation Committee and the Medical Executive Committee in their peer review of Dr. Meyers.  The letter explained that the Medical Executive Committee had reached a decision to forward a recommendation of revocation to Riverside's Board of Directors, but that the matter remained pending as Dr. Meyers had decided to avail himself of the peer review appeals process. In fact, it was Dr. Meyers' decision to request a fair hearing panel and various scheduling conflicts caused, in part, by the unavailability of his newly retained counsel, that resulted in the long delay between the decision of the Medical Executive Committee and the onset of the fair

---

accusations relevant by attaching, as exhibits, a letter of reprimand from the Medical Board of California, dated some four years prior to the earliest of the events at issue in the instant federal case, and an unattested listing of allegations of Dr. Levinson's improper sexual conduct toward a patient.  The court takes a low view of such tactics, which appear designed to leave the impression that the merits of the defendant's motion for summary judgment should be viewed in light of the personal and professional merits of the defendant.  While the presentation of such information in a pleading alone is unnecessary, there is simply no justification for providing the attached exhibits.

hearing panel.  Although both parties acknowledge that the report of Dr. Levinson was originally transmitted to Riverside outside the one-year limitation period, the fair hearing panel was held within one year of the date on which the plaintiff filed this action.

The plaintiff's Complaint alleges that, following Dr. Levinson's transmission of his report to Riverside on or about June 27, 2000, Riverside republished the report on a number of occasions.  Specifically, the plaintiff alleges that Riverside republished Dr. Levinson's report to MIH and to certain of its peer review committees on February 5, 2001, February 12, 2001 and in March through May of 2001.  The plaintiff also alleges that Riverside republished Dr. Levinson's report to a Riverside fair hearing panel, that convened in April and May of 2001, at Dr. Meyers' request, to examine the validity of the recommendation for the revocation of Dr. Meyers' privileges made by the Riverside Medical Executive Committee.

The fair hearing panel that occurred in April and May 2001 was a part of the peer review process that was afforded to Dr. Meyers because the Medical Executive Committee recommended an adverse action to the Riverside Board of Directors.  At this hearing, Dr. Meyers was represented by counsel and was able to examine the evidence and witnesses relied upon by the Medical Executive Committee in making its recommendation.  It is not disputed that the purpose of the fair hearing panel was to determine whether evidence existed to support the recommendation of the Medical Executive Committee.

Dr. Meyers does not allege that statements from Dr. Levinson's report were repeated orally during the fair hearing panel; only that the report was introduced into evidence during the hearing.  Although it is alleged that the fair hearing panel ultimately concluded that the revocation of Dr. Meyers' clinical privileges did not have a substantial factual basis, the ultimate

10

outcome of the peer review proceedings conducted at Riverside is not an issue germane to the defendant's motion for summary judgment.

It is further not in dispute that Dr. Levinson was unaware of Dr. Meyers' affiliation with MIH, or that Dr. Meyers had been suspended by MIH shortly after he was summarily suspended by Riverside.  Following a number of communications between Riverside and MIH, Riverside provided MIH with documents relating to Riverside's peer review proceedings against Dr. Meyers, including Dr. Levinson's report.  Dr. Meyers signed a release on or about April 20, 2000, authorizing Riverside to release any and all information and/or documents requested by the medical staff of MIH with regard to his medical staff membership, clinical privileges and conduct at Riverside.

## II. Standard of Review

### A. Motion to Dismiss

On a motion to dismiss, the court considers the allegations presented in the plaintiff's Complaint as true, and views the record as a whole in the light most favorable to him.  See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).  The defendant's motion, as discussed in greater detail herein, is premised on the so called Colorado River doctrine of abstention. Although not a truly recognized form of abstention, the principles espoused in Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) recognize that in exceptional circumstances, a federal court may abstain from exercising jurisdiction in deference to the jurisdiction of a state court.  See Federal Deposit Ins. Corp. v. Nichols, 885 F.2d 633, 637 (9th Cir. 1989).

B. Motion for Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).  The court must assess the evidence and draw all permissible inferences in the non-movant's favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Nevertheless, the non-movant must make a sufficient evidentiary showing on each element of his claims such that a jury could reasonably find in his favor.  Celotex, 477 U.S. at 322.  While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-moving party's burden to establish its existence.  See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986).

The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).   The evidence that the non-moving party presents to this end must be more than a "mere scintilla."  Barwick v. Celotex Corp., 736 F.2d 946, 958-959 (4th Cir. 1984).  In order for the non-moving party to survive summary judgment, he must present evidence that is "significantly probative."  Celotex Corp., 477 U.S. at 327.  If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment must be granted.  Anderson, 477 U.S. at 249-250.  District courts have an "affirmative

12

obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323-25).

When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Cray Communications Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994). Summary judgment does not require, however, that no factual issues be in dispute. To find against the moving party, the court must find both that the facts in dispute are material and that the disputed issues are genuine. Only "facts that might affect the outcome of the suit under governing law" are material. Anderson, 477 U.S. at 248. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" Id. Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## II. Discussion

### A. Motion to Dismiss

In his motion to dismiss, the defendant argues that, given the above-described parallel nature of the state and federal proceedings, which allege counts for defamation that are predicated on the same allegedly defamatory acts, the plaintiff has impermissibly split a single cause of action for defamation into identical claims against Riverside and Dr. Levinson. The defendant contends that if this court allows this case to proceed, serious res judicata problems will develop. As a result, the defendant urges the court to abstain from exercising jurisdiction

over the instant Complaint in deference to the proceedings before the Newport News Circuit

Court.

### 1. Claim Splitting

The defendant's argument is based on the allegations contained in the plaintiff's Third

Amended Motion for Judgment, which unlike prior versions, does include acts that form the

basis for the instant federal suit in its specific allegations relating to the defamation count.  The

prior versions of the plaintiff's Motion for Judgment do include descriptions of acts forming the

basis for the instant federal Complaint; however, these descriptions are contained in the general

background portions of the Motions for Judgment, and are not set out as specific allegations

under a count for defamation.  The defendant concludes that the Third Amended Motion for

Judgment encompasses the substance of the instant Complaint.

The plaintiff claims that in filing his Third Amended Motion for Judgment in April 2005,

he inadvertently included factual allegations under the specific count of defamation that act to

assert the same count for defamation against Riverside as he has brought against Levinson in his

Complaint.  The plaintiff asserts that any such newly added allegations would be time barred in

the state case.

In reviewing the Third Amended Motion for Judgment and the instant Complaint, it

appears to the court that the area of overlap is indeed minor and may well have been

unintentional on the part of the plaintiff.  In Count One of the Third Amended Motion for

Judgment, which alleges multiple acts of defamation, the plaintiff does allege acts concerning Dr.

Levinson's publication of his report and the republication of this report by Riverside to the

Medical Executive Committee in July of 2000.  The plaintiff admits that any claims based on

14

these acts would be barred by the one-year statute of limitations for defamation claims.  In a section entitled "Defamatory Statements Published or Republished in 2001," however, the plaintiff alleges that "Riverside republished select information about all its peer review activities to MIH in January/February 2001 to damage and defame Meyers."  See Exhibit D at ¶ 289, Defendant's Motion to Dismiss.  The Third Amended Motion for Judgment then describes how Riverside republished Dr. Levinson's report to MIH.  See id. at ¶ 292.  The Third Amended Motion for Judgment does not, however, contain the claims in the instant Complaint based on Riverside's dissemination of Dr. Levinson's report at the fair hearing panel.

The defendant contends that by seeking recovery from both Riverside and Dr. Levinson based on the same cause of action for defamation, the plaintiff has impermissibly split a cause of action.  See Shortt v. Hudson Supply & Equip. Co., 191 Va. 306, 310 (1950).  In doing so, the defendant argues that the state and federal actions raise the problems of res judicata and/or collateral estoppel.

In Virginia, "the test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim."  Brown v. Haley, 233 Va. 210, 216 (1987).  The remedy for splitting a cause of action is application of the doctrines of collateral estoppel or res judicata.  The defendant argues that one cause of action exists for the plaintiff's claim of defamation based on the republication of Dr. Levinson's report by Riverside to MIH.  If this is indeed one cause of action, the defendant argues that an attempt to split is subject to res judicata such that litigation in the first case of part of the cause of action prevents further litigation in the second case of another part of the cause of action.  See Shepherd v. Richmond Engineering Co., 184 Va. 802, 807 (1946).

Under Virginia law, in order to prevail on a claim of defamation, the plaintiff must establish (1) that the statements at issue were false; and (2) that the defendant knew the statements at issue were false, or, believing them to be true, either lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth. See Ingles v. Divley, 246 Va. 244, 251 (1993). As each republication constitutes a separate tort, a separate cause of action exists for Riverside's republication of Dr. Levinson's report to MIH. See Part II.B.1 infra (discussing Virginia law of defamation). Although the defendant argues that the plaintiff is attempting to split this cause of action because the same evidence is required to prove each claim, the court finds that this is not the case as the evidence regarding Riverside's and Dr. Levinson's alleged knowledge of the falsity of the report would be different in each action.

Furthermore, it is premature to suggest the application of res judicata in this case. The doctrine of res judicata acts to bar all subsequent proceedings based upon the same cause of action between the same parties, or those in privity with those parties, regardless of whether or not all potential issues were actually litigated in the first case. See Ward v. Charlton, 177 Va. 101, 115 (1941). Contrary to the defendant's claims, the potential specter of res judicata has yet to materialize such that dismissal on this ground is appropriate because the defamation count has not been fully adjudicated in either state or federal court. See Harnett v. Billman, 800 F.2d 1308, 1312 (4th Cir. 1986) (explaining that the doctrine of res judicata requires final adjudication of cause of action). Finally, the court notes that the alleged overlapping act of defamation that raises the potential of res judicata was first raised in the federal suit. As the defendant admits, it was not until the plaintiff filed his Third Amended Motion for Judgment in April 2005 that the overlap between the state and federal actions became apparent. Thus, even if the plaintiff had

attempted to impermissibly split his cause of action, the remedy would be to address this in the

Newport News Circuit Court because the plaintiff's action in first raising this cause of action in

federal court might act to preclude him from raising it anew in state court.

The defendant's reliance on the doctrine of collateral estoppel requires an even briefer

discussion.  Collateral estoppel, or issue preclusion, acts to bar relitigation of the same issue in a

second case, even if the second case involves a different cause of action.  See Sandberg v.

Virginia Bankshares, Inc., 979 F.2d 332, 343 (4th Cir. 1992).  The defendant claims that

allowing the state and federal actions to proceed will result in collateral estoppel problems

because the factual issues underlying each case are the same.

Specifically, the defendant contends that both courts will have to determine whether the

statements in Dr. Levinson's report were defamatory; whether they were nonetheless privileged;

whether, if privileged, this privilege was overcome by Dr. Levinson's malice; and even if

malicious, whether Riverside complied with the federal Health Care Quality Improvement Act

("HCQIA"), see 42 U.S.C. 11101 - 11152, and/or the Virginia civil immunity statute, see Va.

Code Ann. § 8.01-581.16, such that Dr. Levinson and/or Riverside are immunized from liability

as participants in a peer review process.  Although the defendant may well be correct that both

courts may examine these issues, any application of collateral estoppel is decidedly premature as

none of these issues has been litigated.  See Sandberg, 979 F.2d at 343.  The court will not

engage in speculation as to what decisions the Newport News Circuit Court might take and what

effect they might have on the present litigation.

2. Colorado River Abstention

Perhaps realizing that the remedies of collateral estoppel and res judicata do not fully

apply in light of the lack of an adjudicated cause of action or any fully litigated issues, the defendant argues that the court should abstain from exercising its jurisdiction pursuant to the doctrine espoused in <u>Colorado River Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976). Although it is well-recognized that federal courts have a "virtually unflagging obligation" to hear all cases over which they have jurisdiction, in rare and exceptional circumstances they may abstain "for reasons of wise judicial administration." <u>Colorado River</u>, 424 U.S. 800, 817-18 (1976). "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Id.</u> at 813.

To abstain under <u>Colorado River</u>, the court must first identify the existence of parallel proceedings in state court. Next, the court must consider several factors to determine whether "exceptional circumstances" exist to warrant abstention. These factors are: (1) the assumption by either court of jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction and the progress achieved in each action; (5) the source of applicable law; and (6) whether the state proceedings will adequately protect the parties' rights. <u>Baseline Sports, Inc. v. Third Base Sports</u>, 341 F. Supp. 2d 605, 608 (E.D. Va. 2005). An additional factor identified by the Supreme Court in <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25-26 (1983), is whether the later-filed lawsuit is reactive or vexatious. <u>See</u> <u>Holland v. Hay</u>, 840 F. Supp. 1091, 1102 (E.D. Va. 1994) (citing <u>McLaughlin v. United Va. Bank</u>, 955 F.2d 930, 934-35 (4th Cir. 1992)).

Two suits are parallel if "'substantially the same parties litigate substantially the same issues in different forums.'" <u>Baseline</u>, 341 F. Supp. 2d at 608 (quoting <u>New Beckley Mining</u>

Corp. v. Int'l Union, 946 F.2d 1072, 1073 (4th Cir. 1991)).  Neither the parties nor the issues

need to be identical for the proceedings to be considered parallel - substantial similarity is

sufficient.  See Holland, 840 F. Supp. at 1099-1100.  In this case, the state action involves

different defendants and, largely, different allegations.  See Gannet Co., Inc. v. The Clark Group,

Inc., 286 F.3d 737, 742 (4th Cir. 2002) (finding that state and federal action that involved

different issues with different requisites of proof were not parallel).  As discussed above, even

considering the defendant's argument that both actions contain the same allegation regarding the

republication of Dr. Levinson's report to MIH, the evidence to prove this cause of action against

each defendant, while certainly overlapping as to the falsity and publication of Dr. Levinson's

report, differs with respect to the knowledge of Dr. Levinson and Riverside as to the alleged

falsity of the statements made in the report.  The court also observes that until the filing of the

Third Amended Motion for Judgment, it did not appear that there was any direct overlap between

the state case against the Riverside defendants and the federal case against Dr. Levinson.  In

viewing these two actions in their entirety, the court does not believe that any minor overlap

establishes that they are parallel such that the treatment of the Riverside action in the Newport

News Circuit Court would encompass all of the issues raised in the instant Complaint.  See

Gannet, 286 F.3d at 742.

Even, however, if the court were to consider these proceedings parallel, application of the

several Colorado River factors reveals that there are no exceptional circumstances that weigh

contrary to the strong policy of retaining jurisdiction.  The defendant bears the burden of

demonstrating that the exceptional circumstances necessary to support abstention and dismissal

are evident.  See Holland, 840 F. Supp. at 1098.  The Supreme Court has counseled that the

19

court's "task in cases such as this is not to find that some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify surrender of that jurisdiction." Moses H. Cone, 460 U.S. 1, 25-26 (1983).

The parties agree that a number of these factors do not apply or are neutral in their application. There is no property over which either court has asserted jurisdiction. Additionally, as Dr. Levinson is a California resident, the state court is not a more convenient forum for litigation than this court. Also, there is no showing that one court would be more protective of the parties' rights than the other. See Baseline, 341 F. Supp. 2d at 608.

The avoidance of piecemeal litigation has been deemed the most important of the Colorado River factors and the defendant relies heavily on it in his argument that abstention is warranted. See Holland, 840 F. Supp. at 1101. "'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" Gannett, 286 F.3d at 744 (quoting American Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)).

Although the existence of parallel state and federal proceedings is wasteful of judicial resources, the Fourth Circuit has stressed that "judicial diseconomy alone does not justify abstention." Gordon v. Luksch, 887 F.2d 496 (4th Cir. 1989) (noting that mere threat of inconsistent results is not enough to warrant abstention). The general rule that the "'pendency of a state court proceeding is no bar to proceedings concerning the same matter in the Federal court having jurisdiction'" was not done away with under Colorado River. See Holland, 840 F. Supp. at 1098 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)).

Consideration of the piecemeal factor requires an "inquiry into the scope of the proceeding and nature of available defenses in the State court action." Holland, 840 F. Supp. at 1101.  In this case, the court does not believe that denial of the defendant's motion to dismiss will result in two separate lawsuits over essentially the same issues.  See id. (justifying abstention based on piecemeal nature of state and federal litigation).  Apart from the fact that the emergence of the allegation concerning Riverside's republication of Dr. Levinson's report to MIH did not arise in the state case until the filing of the Third Amended Motion for Judgment, the state case contains different allegations and different defendants.  Although the factual basis for the federal Complaint is contained in the general allegations of the Third Amended Motion for Judgment, this is just one portion of the state case that spans over many years and includes many more allegations than does the federal case, including a tortious interference claim.  Additionally, not all of the allegations of defamation raised in the federal case, such as Riverside's republication of Dr. Levinson's report to the fair hearing panel, are raised as specific allegations under the count of defamation in the Third Amended Motion for Judgment.

Furthermore, as the defendant admits, the disposition of the Riverside Action in state court will necessarily involve questions of state and federal immunity that may not come into play in the federal case.  In determining whether Riverside, through the efforts of its peer review organizations, is subject to immunity under the HCQIA, the court would have to examine the nature of the entire peer review proceedings, which may not be an issue in the instant federal case.  See 42 U.S.C. § 11111.

One issue that may receive overlapping treatment is whether Dr. Levinson's report was defamatory.  This assumes, of course, that the plaintiff's belated assertion of a specific allegation

in his Third Amended Motion for Judgment based on Dr. Levinson's report is not time-barred. The plaintiff claims that the pleading of this specific allegation in the Third Amended Motion for Judgment was an oversight, and contends that he could not proceed on this claim in the state court as it is a new claim for defamation that was raised outside of the one-year limitation period. If the plaintiff could not proceed on this claim, there would be no issue of overlapping treatment. Even assuming, however, that both courts would consider this issue, the defamatory nature of the report is not dispositive in the context of the conditional privileges provided under the HCQIA and Virginia's civil immunity statute.  See 42 U.S.C. § 11111; Va. Code Ann. § 8.01-581.16. These inquiries as to Dr. Levinson and Riverside do not necessarily coincide such that duplicative effort would be expended by two courts.

Accordingly, the court finds that the minor overlap in the federal and state actions does not "create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation."  Gannett, 286 F.3d at 744.  Whichever court determines the defamation issue first will likely result in a res judicata effect.  Such a possibility, however, does not weigh in favor of abstention.  See id. at 746 (noting that threat of different outcomes was not type of inconsistency against which abstention was designed to protect because res judicata effect would be given to first judgment).  Contrary to the defendant's claim, the concern of piecemeal litigation, while seemingly apparent from the faces of the Third Amended Motion for Judgment and the instant Complaint, does not, in view of the complex issues concerning immunity and the posture of the different defendants and different claims, weigh strongly in favor of abstention. See id.

In assessing the fourth Colorado River factor, the order in which jurisdiction was

obtained, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21.  This factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Id.  The present circumstances do not present a situation where the state action is a good deal further along in its proceedings than the instant case.  Motions for summary judgment have been filed in both actions, and the federal action is already set for trial in September 2005.  Moreover, the overlap between the state and federal actions did not become explicit until the filing of the Third Amended Motion for Judgment, which was served in April 2005, some three years after the federal action was filed.  Although the plaintiff's original Motion for Judgment was filed prior to the filing of the instant Complaint and it appears as if the state case has moved slightly further along in the course of discovery, any outpacing of the state case is due largely to the fact that the plaintiff has raised many more claims and involved more defendants in that case.  In comparing the status of the two actions in the context of the minor overlap revealed in the Third Amended Motion for Judgment, it does not appear as if the state case has appreciably advanced the federal case.  Thus, this factor does not weigh in favor of abstention.

As to the source of applicable law, it is clear that the plaintiff's claims in both actions arise under state law.  The Supreme Court has made clear, however, that the presence of state law and the adequacy of state proceedings can be used only in rare circumstances to justify Colorado River abstention.  See Moses H. Cone, 460 U.S. at 26.  That state law is implicated in the instant defamation action "does not weight in favor of abstention, particularly since both parties may find an adequate remedy in either state or federal court." Gordon, 887 F.2d at 498.  Furthermore,

23

as the Fourth Circuit has recognized, "in a diversity case . . . federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." Gannett, 286 F.3d at 747.

The absence of a federal question does not, itself, bear any weight in the analysis. See Baseline, 341 F. Supp. 2d at 611. The issue of a potential HCQIA defense raised by the defendant, however, does interject a potential federal issue into this case. The court recognizes that "[t]he presence of a federal question would strongly encourage the court not to abstain[.]" Id. Accordingly, this factor also counsels against abstention.

Finally, there is no indication that the federal suit in this case is reactive or vexatious, particularly since the claims at issue in the state case that may intrude on those in the federal case were raised subsequent to the filing of the instant Complaint. See McLaughlin, 955 F. 2d at 935-36 (noting that absent finding of bad faith, courts should "seek to dispose of disputes efficiently and justly" within given jurisdiction); see also Baseline, 341 F. Supp. 2d at 612 (finding that reactive and vexatious nature of federal suit was exceptional circumstance that, coupled with finding of parallel actions and favorability toward abstention of certain other factors justified abstention). As has been discussed, the allegations raised against Dr. Levinson were first raised in the federal case and then raised in the course of the plaintiff amending his Motion for Judgment in state court. That the plaintiff has chosen to proceed in different forums against the different defendants does not permit a finding of vexatious conduct that counsels in favor of abstention.

In balancing the Colorado River factors, the court concludes that none weigh heavily enough against the presumption in favor of exercising federal jurisdiction such that abstention is

appropriate in this case.  <u>See</u> <u>Moses H. Cone</u>, 460 U.S. at 16 (noting that balancing of factors should be heavily weighted in favor of exercising federal jurisdiction).  Therefore, the court will not abstain from exercising its jurisdiction over this case and the defendant's motion to dismiss on this ground is denied.

B. Motion for Summary Judgment

The defendant's motion for summary judgment is premised on Virginia's statute of limitations concerning defamation claims and Virginia's standard governing the liability of an original publisher of defamatory material for acts of republication by a third party.  It is well-recognized that in an action based upon diversity of citizenship, as is the instant case, a federal district court must apply the relevant law of the state in which it sits.  <u>See</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941); <u>Limbach Co., LLC v. Zurich Am. Insur. Co.</u>, 396 F.3d 358, 361 (4th Cir. 2005).  Additionally, when there is no decision by the Virginia Supreme Court on a particular issue, the court "must apply what [it] finds to be the state law after giving proper regard to relevant rulings of other courts of the State."  <u>Barnes v. Thompson</u>, 58 F.3d 971, 982 (4th Cir. 1985).

Both parties agree that the one-year limitation period imposed pursuant to Virginia Code section 8.01-247.1 applies in this case.  Section 8.01-247.1 provides that "[e]very action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues."  Va. Code. Ann. § 8.01-247.  In reviewing the Complaint and the parties' memoranda, the court discerns three categories of defamatory acts alleged by the plaintiff: (1) the initial publication of Dr. Levinson's report on or about June 27, 2000 and the use of that report by the Riverside Investigation and Medical Executive Committees in the

summer of 2000; (2) the republication of Dr. Levinson's report to the Riverside fair hearing panel in April and May 2001; and (3) the republication of Dr. Levinson's report to Mary Immaculate Hospital and certain of its committees in February - May 2001.

There is no dispute among the parties that any cause of action based on Dr. Levinson's initial transmission of his report to Riverside and its consideration by Riverside in June and July of 2000 is time-barred, because this action was not filed until January 31, 2002.   It is also not disputed that Dr. Levinson had no further involvement in the republication of his report to either the Riverside fair hearing panel or to MIH in the winter and spring of 2001.  Thus, the court only concerns itself with the alleged acts of defamation that took place in the second and third categories described above.  The acts alleged in these categories are premised on the liability of an original defamer for acts constituting the republication of defamatory statements.

1. Law of Defamation

Prior to reviewing the arguments of the defendant in support of his motion for summary judgment, the court provides a brief overview of the relevant standards governing defamation claims and the controlling statute of limitations in Virginia.  As the parties agree, Virginia follows the common law version of defamation whereby a cause of action accrues and the statute of limitation begins to run when the defamatory material is "published," i.e., communicated or transmitted to a third party.  See Jordan v. Shands, 255 Va. 492, 498 (1998).  A republication of defamatory material following the initial publication does not constitute a continuing tort, nor does it toll the running of the limitation period on the initial publication.  See Weaver v. Beneficial Finance Co., Inc., 199 Va. 196, 200 (1957).  Instead, each republication of the same defamatory material, if a separate and distinct publication as described below, gives rise to a new

action.  See id.

_____The originator of defamatory material is liable for the republication of that material by a third party if the originator either expressly or implicitly authorized the republication, or if the republication of the defamation was a natural and probable consequence of the original publication.  See id.  For the purposes of this Order, Dr. Levinson's report is assumed to be defamatory.  Thus, if Dr. Levinson either authorized the republication of his report, or if this republication naturally and probably followed its original publication, he may be liable for Riverside's acts in republishing the report.  Whether a republication is the natural and probable consequence of the original publication, such that the original publisher is liable, is generally a question of fact for a jury to decide.  See id.  When, however, no evidence exists to support a finding by a jury that republication was the natural and probable consequence of the original publication, summary judgment is appropriate.  See Celotex, 477 U.S. at 322.

The general premise that each separate and distinct republication gives rise to a new cause of action and a new limitation period is constrained by what has been termed the single publication rule.  Under this rule, a single aggregate publication of the same defamatory material to an intended audience, which may consist of many copies of the same material distributed within a large group, gives rise to only one cause of action.  See Morrissey v. William Morrow & Co., 739 F.2d 962, 967 (4th Cir. 1984).  This rule was developed to prevent multiple suits arising from what essentially amounts to an aggregate publication or a delayed distribution of the same defamatory material to an audience, no matter how large or widespread, any member of which may be considered an intended recipient of the initial publication.  See id.

Although the Virginia Supreme Court has not decided to adopt the single publication rule,

27

the United States Court of Appeals for the Fourth Circuit has indicated that the Virginia Supreme

Court would do so.  See id. 967 (noting that district court was correct in assuming that Virginia

Supreme Court would adopt single publication rule); see also Semida v. Rice, 863 F.2d 1156,

1161 n2 (citing Morrissey, 739 F.2d at 967) (noting that single publication rule is followed in

Virginia); Katz v. Odin, Feldman & Pittleman 332 F. Supp. 2d 909, 918 n10 (E.D. Va. 2004)

(describing that although Virginia Supreme Court has not formally addressed application of

single publication rule, Fourth Circuit has upheld conclusion that Virginia courts would follow

rule).  Additionally, various federal decisions emanating from Virginia as well as various

Virginia Circuit Court decisions have applied the single publication rule to defamation claims or

recognized its application in Virginia.  See e.g., Semida, 863 F.2d at 1161;  Katz, 332 F. Supp.

2d at 918; Armstrong v. Bank of America, 61 Va. Cir. 131, 132 (2003) (recognizing that single

publication rule has been cited by various Virginia Circuit Courts).   As this court must decide

questions of state law in the same manner as would the highest state court, this court determines

that the single publication rule is applicable to these proceedings.  See Barnes, 58 F.3d at 982;

Morrissey, 739 F.2d at 967.

At the outset, the court recognizes that neither party disputes that the republication of Dr.

Levinson's report to the fair hearing panel, if indeed it was a republication rather than a repetition

or a delayed distribution, was the natural and probable consequence of the original publication of

the report.  In his opposition memorandum, the plaintiff references the letter agreement entered

into by Riverside and Dr. Levinson in support of this point:

> Levinson authorized the unrestricted use of his report by Riverside for its peer review
> activities so long as it used it confidentially. . . .   By authorizing Riverside's unrestricted
> use of his report for its peer review activities, Levinson also impliedly authorized the use

of his report at the fair hearing.

See Plaintiff's Brief Opposing Defendant's Motion for Summary Judgment, p. 8.  The defendant

also does not dispute that redistribution of Dr. Levinson's report to the fair hearing panel was

contemplated by the language of the letter agreement that authorized use of the report for the peer

review process.

2. Riverside Fair Hearing Panel

The defendant argues that Riverside's use of Dr. Levinson's report at the fair hearing

panel occurred within the specific confines of the Riverside peer review process for which Dr.

Levinson's report was intended.  Accordingly, the defendant maintains that the introduction of

Dr. Levinson's report did not create a new cause of action; rather the accrual date for this act

dates back to June 27, 2000, when Dr. Levinson originally transmitted his report to Riverside.  In

advancing this argument, the defendant relies upon the single publication rule, and contends that

the introduction of Dr. Levinson's report at the fair hearing panel was merely a delayed

distribution of the report to the same intended peer review audience, rather than a separate and

distinct act of republication to a different audience.

The plaintiff, notwithstanding his above argument that Dr. Levinson intended his report

to be used for any peer review activities occurring at Riverside, claims that the single publication

rule does not apply to the introduction of the report at the fair hearing panel because the fair

hearing panel did not occur in substantial contemporaneity with the original publication date and

the subsequent dissemination of Dr. Levinson's report was not directed to individuals with a

direct interest in the matter.  See Semida, 863 F.2d at 1161 (noting that treatment of repetition of

defamatory material as aggregate communication within confines of single publication rule is

reasonable "at least where the incidents of distribution are substantially contemporaneous with the original communication to the organization and where the distribution is confined to those persons in the organization having a direct interest in the matter.").

The parties dispute on the applicability of the single publication rule is legal, rather than factual, making its resolution appropriate at the summary judgment stage.  See Fed. R. Civ. P. 56. The parties agree that several cases interpreting Virginia law are relevant to this issue, and the court finds that the application of these authorities does resolve this issue in the defendant's favor.

The plaintiff relies heavily on the Virginia Supreme Court's decision in Weaver v. Beneficial Finance Co., Inc., 199 Va. 196, 200 (1957), for the implicit proposition that the republication of a defamatory document within the same organization gives rise to a separate cause of action.  In Weaver, the defendant corporation sent a letter to the plaintiff's government employer in February 1955, regarding the plaintiff's failure to pay a debt owed to the defendant corporation.  See Weaver, 199 Va. at 198.  The letter explained that although the defendant did not wish for the plaintiff to be discharged from his employment, the defendant believed that if one of the plaintiff's superiors would explain the situation to the plaintiff, this might induce the plaintiff to pay his debt.  See id.

This letter was placed in the plaintiff's personnel file and then republished in March 1956, the date on which the plaintiff argued that his action accrued, to a promotion board that convened to consider the plaintiff's employment record.  See id. at 200.  The plaintiff argued that the republication of this letter was the natural and probable consequence of the defendant's original publication of the letter in February 1955.  See id. at 199.  The defendant argued that the

30

cause of action arose when the letter was initially published in February 1955, such that the plaintiff's action was barred by the statute of limitations.  See id.

_____The Virginia Supreme Court agreed with the plaintiff and held that a jury could conclude that, based on the contents of the letter that suggested that one of the plaintiff's superiors might explain the import of his debt owed to the defendant corporation, the defendants "were requesting that the letter be republished to his superiors at a future date or that the republication was the natural and probable consequence of their act."  Id. at 201.  Thus, Weaver stands for the proposition that the originator of defamatory material can be liable for republication of his defamation by a third party.  See id.

The holding of Weaver, however, is not inconsistent with Dr. Levinson's reliance on the single publication rule.  First, there was no discussion of the single publication rule in Weaver. This, of course, is not surprising considering that the advent of the single publication rule was a fairly recent development at the time Weaver was decided.  See Restat. 2d of Torts, § 577A (noting the advent of the single publication rule in the early 1950s).  Second, there is apparently no issue in the instant case, as there was in Weaver, that the introduction of Dr. Levinson's report to the Riverside fair hearing panel was either authorized or the natural consequence of the letter agreement that provided that Dr. Levinson's report would be used in the peer review process. Finally, although the plaintiff is correct that Weaver does not foreclose liability for the author of defamatory material when that material is subsequently republished within the same organization, inherent in the Weaver decision is that the separate cause of action was based on the alleged defamatory material being republished to a different audience within the organization. See id. at 200-201 (describing general rule that new publication occurs each time defamatory

material is brought to attention of third person and describing how jury could conclude that defendants requested that defamatory letter be republished to plaintiff's superiors at future date).

In arguing that the republication of Dr. Levinson's report did not result in a new cause of action, the defendant relies on a number of cases that the court believes better address the application of the single publication rule.  In Semida v. Rice, 863 F.2d 1156, 1158 (4th Cir. 1998), the plaintiff alleged a libel action against his former business associate and an accountant. The plaintiff and his former business associate formed and operated a consulting firm, ASI, which was an approved subcontractor to TIPCO, a firm doing work in Somalia financed by the Small Business Administration ("SBA"), and administered by the United States Agency for International Development ("USAID").  See Semida, 863 F.2d at 1158.

The defendant accountant, in a letter to the defendant former business associate dated March 20, 1986, identified certain accounting irregularities in ASI's books.  See id.  This information made its way to USAID, which sent a telex to TIPCO on May 12, 1986, informing TIPCO that ASI was no longer an approved subcontractor as a result of USAID's receipt of information from the defendant accountant indicating questionable accounting.  Id.

The plaintiff in Semida became aware of the USAID telex referring to the receipt of information from an accountant on or before May 20, 1986.  Despite the plaintiff's efforts to discuss and resolve the problems of ASI, TIPCO formally terminated the ASI subcontract on June 24, 1986.  The plaintiff filed his complaint on June 18, 1987 in the United States District Court for the Eastern District of Virginia.  The district court determined that the plaintiff's cause of action, based on the alleged defamatory letter from the defendant accountant, was barred by the statute of limitations.  See id. at 1160.

32

In appealing this ruling, the plaintiff contended that there was a republication of the defamatory letter, which was published on March 20, 1986 and, thus, outside of the one-year period for filing suit, after June 18, 1986 - one year before the suit was filed.  See id. at 1161. The plaintiff claimed that a separate cause of action of defamation arose when a USAID employee, in late June 1986, who was stationed in Washington, D.C., sent the entire contract file, including the defamatory letter, to Somalia immediately prior to TIPCO's formal termination of the ASI subcontract.  See id.

The Fourth Circuit determined that the transmission of the contract file did not constitute an actionable republication.  Id. at 1161.  Although the court first determined that the USAID employee would not by guilty of libel as the republisher as he had not reason to know of the defamatory contents of the contract file, the court found that even more important was the notion that "the copy of [the defendant accountant's letter] sent by [the USAID employee] is analogous to multiple copies of the same edition of a book or magazine article."  Id.  The Fourth Circuit recognized that the accountant's letter was republished at the time it was first distributed to USAID and concluded that "multiple copies within the organization should be considered part of an aggregate communication for purposes of applying the single publication doctrine."  Id. The Fourth Circuit described that the single publication rule is followed in Virginia and continued on to explain that "[t]reatment as an aggregate communication is reasonable at least where the incidents of distribution are substantially contemporaneous with the original communication to the organization and where the distribution is confined to those persons in the organization having a direct interest in the matter."  Id. (citing Morrissey, 739 F.2d at 967).

The plaintiff attempts to distinguish Semida in a number of ways.  First, the plaintiff

argues that Semida cannot stand for the proposition that any republication of defamatory material within the same organization is an aggregate publication, for this would be inconsistent with the holding and facts of Weaver.  As described above, however, the Virginia Supreme Court in Weaver did not address the single publication rule, nor did it appear that the application of the single publication rule, which was relatively new at the time, was even argued.  See Restat. 2d of Torts, § 577A (noting that Uniform Single Publication Act was promulgated in 1952 by Commissioners on Uniform State Laws).  Moreover, when first promulgated, the single publication rule was described as applying to the same editions of mass produced newspapers, books and magazines.  See Ogden v. Assoc. of United States Army, 177 F. Supp. 498, 502 (D.D.C 1959) (describing advent of single publication rule).  Its application to non-mass produced publications has evidently evolved over the years, keeping pace with technology advances that allow one to easily make or print multiple copies of a single document.

Although the court agrees with the plaintiff that not every republication within the same organization triggers the application of the single publication rule, the court also finds that Weaver does not stand for the proposition that every redistribution of defamatory material within the same organization must constitute a separate cause of action.  The direction of the Semida decision suggests that courts must look to the facts and circumstances of each individual case in determining whether a separate cause of action is alleged.  See Semida, 863 F.2d at 1161.

The plaintiff also contends that the Fourth Circuit's application of the single publication rule in Semida was premised on the substantial contemporaneity between the initial publication and the subsequent distribution of the defamatory material and the fact that distribution was limited to those with a direct interest in the matter.  The plaintiff contends that neither factor is

34

present in the instant case because Dr. Levinson's report was not republished to the fair hearing

panel until ten months after the initial publication and that the republication was not to

individuals with a direct interest in the matter.

The court first observes that the Fourth Circuit did not hold that only when the above-

described factors are present is treatment of distribution of defamatory material as an aggregate

publication appropriate.  See Semida, 863 F.2d at 1161 (noting that treatment as aggregate

publication is appropriate at least when two factors are present).  More importantly, however, the

court finds the plaintiff's attempts to distinguish the facts in Semida from those in the instant

case unavailing because both factors referenced in Semida are present in the instant case.

a. Substantial Contemporaneity

In Semida, the defendant accountant first published his letter in March 1986.  It was

received by USAID in early May 1986, and alleged to have been subsequently redistributed in

late June 1986.  See id. at 1160.  It is thus apparent that substantial contemporaneity, to the extent

it serves as a limiting factor to the application of the single publication rule, does not require that

the redistribution occur immediately after the initial publication.  In the instant case, the

Riverside bylaws provide a physician with thirty (30) days to request a fair hearing panel.  Such a

hearing must be afforded the physician within thirty (30) days of his request for one.  The delay

in holding the hearing from August 2000 to April 2001 was evidently due to various scheduling

conflicts and the plaintiff's obtaining of new counsel.  The court finds that there is no dispute that

the fair panel hearing was the next anticipated step in the peer review process, a step that is

normally anticipated to occur much closer in time to a recommendation of the Medical Executive

Committee.  Accordingly, the redistribution of Dr. Levinson's report was substantially

contemporaneous with the original transmission of the report to Riverside on or about June 27, 2000.  See Semida, 863 F.2d at 1160.

The court finds support for its determination that substantial contemporaneity need not be construed to mean substantial immediacy in Katz v. Odin, Feldman & Pittleman 332 F. Supp. 2d 909, 913 (E.D. Va. 2004), a recent decision from this district and a case cited by the defendant and distinguished by the plaintiff.  In Katz, the defendant law firm agreed to arbitrate a fee dispute with the plaintiff, a former client.  See Katz, 332 F. Supp. 2d at 913.  On June 28, 2002, the law firm submitted a position letter to the chairman of the state bar arbitration committee. The plaintiff alleged in his lawsuit that the statements made in the June 28, 2002 letter were defamatory.  The actual fee arbitration hearing was held on June 30, 2003, a year after the date that the law firm's letter was sent to the arbitration committee.  See id.  At the hearing, however, the law firm's representative allegedly repeated the defamatory statements from the June 28, 2002 letter.  On June 28 2004, the plaintiff initiated his lawsuit and the defendant law firm moved to dismiss the case, in part, based on the statute of limitations.  See id. at 914.

The Katz court first determined that any claims based on the June 28, 2002 letter to the arbitration committee were barred by the one-year limitation period.  See id.  In an effort to avoid this conclusion, the plaintiff argued that every distinct viewing of the letter, first upon its receipt and then again at the arbitration hearing, constituted a separate publication and, thus, a new cause of action.  The court determined that if the plaintiff was correct, "a new statute of limitations would begin to run upon each instance of republication, reviving plaintiff's claim and giving him an additional year to file suit."  Katz, 332 F. Supp. 2d at 917-18.

In applying the Fourth Circuit's decision in Semida, the district court in Katz rejected the

36

plaintiff's claim of republication based on the repeated viewing of the June 28, 2002 letter, finding that "[a]lthough subsequent distribution of a defamatory statement may continue to increase plaintiff's compensable damages, it does not create independent actions or start the statute of limitations running anew." Id. at 918 (citing Zuck v. Interstate Publishing Co., 317 F.2d 727-729-30 (2d Cir. 1963)). The Katz court determined that the plaintiff could maintain only one cause of action arising from the June 28, 2002 letter, even though the alleged reviewing of the letter occurred over a year later on June 30, 2003. See id. at 918. Thus, this court concludes that the ten months between original publication of Dr. Levinson's report and its introduction at the Riverside fair hearing panel some ten months later is not a bar to the application of the single publication rule.

b. Direct Interest

In an effort to distinguish the ruling in Katz, the plaintiff argues that Katz involved republication of the same letter to the same arbitration panel whereas in the instant case, Dr. Levinson's report was republished to a different target audience. This distinction is of little substance. First, the June 28, 2002 letter at issue in Katz was originally published to the chairman of the arbitration committee, and then allegedly distributed to and reviewed by the members of the committee a year later, just as Dr. Levinson's report was originally published to the peer review committees and later introduced at the fair hearing panel. Second, the court in Katz did not expressly support its ruling based on the fact that the June 28, 2002 letter was read by the same panel; rather, the court relied on the ruling in Semida that involved redistribution of a defamatory statement to an overseas office. See Katz, 332 F. Supp. at 918 (relying on Semida). While the court in Katz may have implicitly relied on Semida's "direct interest in the matter"

37

factor, it did not attempt to narrow the application of the single publication rule such that it would not apply in the instant case.  See id.

The court agrees with the decisions in Semida and Katz that the repeated viewing of Dr. Levinson's report, by members of the target audience, "is no different from multiple copies of a book or magazine article read by thousands."  See Katz, 332 F. Supp. 2d at 918 (citing Semida, 863 F.2d at 1161).  Although Katz involved redistribution of the alleged defamatory material to the same audience on occasions separated by over a year, Semida involved the redistribution of the alleged defamatory material to a different audience within the same organization, albeit one with a direct interest in the matter.  Thus, the court concludes that if Dr. Levinson's report was distributed to either the same target audience, or a different audience that shared an interest in it, the single publication rule is applicable.  The shared factor is that both distributions, whether to the same or different audiences, occurred to those individuals within the organization with an interest in the matter.  See Semida, 863 F.2d at 1161; Katz, 332 F. Supp. 2d at 918.

The plaintiff argues, however, that the redistribution of Dr. Levinson's report was not to individuals with a direct interest in the matter.  It certainly appears to the court, as the plaintiff seems to recognize, that the "individuals with a direct interest" factor, which, in view of Weaver could conservatively be construed as the target audience of the defamatory material, is the more significant of the two Semida factors as it is present in both Semida and Katz.  See Semida, 863 F.2d at 1161; Katz 332 F. Supp. 2d at 918.  The plaintiff claims that in interpreting "the matter" to mean peer review of a suspended physician, persons having a "direct interest in the matter" includes only the Investigation Committee and the Medical Executive Committee.  The plaintiff contends that these committees were the target audience to which Dr.  Levinson's report was

intended when initially published on June 27, 2000.  Relying primarily on unsupported attorney

argument, the plaintiff contends that a fair hearing panel is concerned with due process and

fairness, rather than with the quality of the patient's care, which is the purview of the peer review

committees.  See Morrissey, 739 F.2d at 967 (noting that attorney argument does not serve to

defeat motion for summary judgment).

The court finds that the plaintiff's effort to confine the applicability of the single

publication rule to the publication of Dr. Levinson's report to the peer review committees does

not coincide with the undisputed facts in this case and is not supported by the decisions in

Semida and Katz.  Although the plaintiff attempts to distinguish the form and function of a peer

review committee from that of a hearing panel, there is no dispute that the letter agreement

reached between Riverside and Dr. Levinson provided that Dr. Levinson's report would be used

for the "purposes of the peer review activities of [Riverside]."  There was no limitation contained

in the letter agreement as to what portions of the peer review process Dr. Levinson's report was

intended to reach.  The same Riverside bylaws that the plaintiff references in an effort to

distinguish the fair hearing panel from the peer review committees reveal that the fair hearing

panel is part of the appeals process whereby a physician may appeal from the recommendation of

the Medical Executive Committee.  The same section of the Riverside bylaws that describe the

action that the Medical Executive Committee may take after an investigation also provide that

"[a]ny recommendation by the executive committee which adversely affects clinical privileges

shall entitle the affected individual to a hearing as hereinafter provided."  See Exhibit G, p. 32,

Plaintiff's Brief Opposing Defendant's Motion for Summary Judgment.  Dr. Freeman informed

Dr. Levinson of this fact in his letter of August 14, 2000, in which he indicated that the matter of

Dr. Meyers' privileges remained pending as Dr. Meyers had opted to exercise his right to a fair

hearing panel.

Moreover, the plaintiff construes a narrowing effect from the Fourth Circuit's decision in

Semida that is not evident in the language of that case.  The Semida court described only that the

distribution should be confined to those persons in the organization having a direct interest in the

matter.  See Semida, 863 F.2d at 1161.  The Riverside bylaws provide further that "[t]he purpose

of the [fair hearing panel] shall be to recommend a course of action to those acting for the

hospital corporation."  Exhibit G, p. 35, Plaintiff's Brief Opposing Defendant's Motion for

Summary Judgment.  The procedures and duties carried out by the fair hearing panel, as

evidenced in a review of the plaintiff's own exhibit, undercut the plaintiff's attempts to argue that

the fair hearing panel would not have had a "direct interest" in the substance of Dr. Levinson's

report.  The court concludes that the undisputed facts reveal that any portion of the peer review

process conducted at Riverside was part of the intended target audience for Dr. Levinson's

report.  Thus, distribution of the report at the Riverside fair hearing panel was "confined to those

persons in the organization having a direct interest in the matter."  See Semida, 863 F.2d at 1156.

Regardless of the different purposes served by the peer review committees and the fair hearing

panel, it is beyond dispute that both entities had "a direct interest in the matter."  See id.

Finally, the plaintiff's argument that Dr. Levinson's target audience was limited to the

Investigation and Medical Executive Committees is inconsistent with the following statements

made in his opposition memorandum: That Dr. Levinson "authorized the unrestricted use of his

report by Riverside for its peer review activities"; that "it is entirely to be expected that a hospital

would present a report on which it had relied to a fair hearing panel"; and that "[b]y authorizing

40

Riverside's unrestricted use of his report for its peer review activities, Levinson also impliedly authorized the use of his report at the fair hearing." See Plaintiff's Brief Opposing Defendant's Motion for Summary Judgment, p. 8. The plaintiff cannot argue that the redistribution of the report to the fair hearing panel was an authorized, probable consequence of the original publication, while also arguing that the fair hearing panel did not have a "direct interest in the matter."[3]

As it is abundantly clear from the undisputed evidence that the target audience of Dr. Levinson's report were those groups and individuals, within the Riverside organization, having a direct interest in the outcome of the peer review of Dr. Meyers' clinical privileges, the court finds that the distribution of Dr. Levinson's report to the fair hearing panel was part of an aggregate publication that is subject to the single publication rule. Accordingly, the plaintiff's cause of action stemmed from the June 27, 2000 original publication of Dr. Levinson's report. The alleged acts of defamation that occurred as a result of Riverside's introduction of Dr. Levinson's report to the fair hearing panel are therefore barred by the one-year statute of limitations.[4]

---

[3]As referenced in the discussion of the procedural history of this case, directly subsequent to the filing of the plaintiff's complaint, the defendant filed a motion to dismiss for lack of personal jurisdiction. In the course of responding to this motion and to the defendant's objections to the Report and Recommendation prepared by the magistrate judge, the plaintiff made other statements entirely inconsistent with his current position that the fair hearing panel was a distinct audience and not the target of the Dr. Levinson's original report. In an effort to defeat the motion to dismiss, the plaintiff argued that it was implicit in the arrangement between Dr. Levinson and Riverside that Dr. Levinson would testify at any necessary hearing.

[4]Although not binding authority, the court also finds persuasive a decision of the Supreme Court of New York, Gelbard v. Bodary, 270 A.D. 866 (2001), which involved similar facts. In Gelband, a physician participating in the peer review of another physician published an allegedly defamatory letter on March 19, 1993. This letter was subsequently provided to a hospital review committee. The physician later appeared before the committee during a hearing and repeated and extended the statements made in the letter. The plaintiff physician filed a defamation action

3. Republication to Mary Immaculate Hospital

a. Letter Agreement between Dr. Levinson and Riverside

The defendant also argues that the plaintiff's claims based on the republication of Dr.

Levinson's report to MIH and various of its committees should be time-barred because

republication was not the natural and probable consequence of the original publication.  The

defendant contends that the standard for whether the original publisher can be liable for

republication examines the expectancy of the original publisher as to the further use of the

publication.  The defendant claims that the letter agreement reached between Dr. Levinson and

Riverside revealed no expectation of the distribution of Dr. Levinson's report outside the

confines of the Riverside peer review process.  The defendant has provided affidavits from Drs.

Levinson and Freeman attesting that neither expected the letter to be distributed outside of

Riverside.

The plaintiff dismisses the affidavits of Drs. Freeman and Levinson as self-serving, but

does not dispute that Dr. Levinson was unaware that Dr. Meyers had privileges at MIH or that his

report was republished to MIH.  The plaintiff contends that the confidentiality clause of the letter

agreement was not bargained for and, therefore, gratuitous.  He argues that the letter agreement

---

more than one year after the original publication date, but within a year of the republication of
the letter to the committee and the repetition of the statements therein by the defendant physician.
The New York Supreme Court held that the distribution of the contents of the letter to the
committee was not a distinct republication and held any claims based on the letter, as well as on
the statements made by the defendant based on the letter, were untimely.  While the court does
not necessarily agree that oral statements based on the letter would be covered by the application
of the single publication rule, see Katz, 332 F. Supp. at 914 (noting that oral statements based on
defamatory letter within one year period are actionable), the court does agree with the following
concern expressed by the New York Supreme Court: "Were we to hold otherwise, a defamation
claim could accrue when a letter is provided to other individuals involved in a professional
review process months or even years later."  Gelbard, 270 A.D. 2d at 867.

42

and the accompanying affidavit of Dr. Levinson establish at most that Dr. Levinson did not expressly authorize republication outside of the Riverside peer review process; not that he did not impliedly consent to republication.  The plaintiff contends that the letter agreement permits an inference that Dr. Levinson did not care to whom his report was distributed.

The plaintiff also argues that Riverside, as a party to the letter agreement, had reason to believe that the report of Dr. Levinson would be exchanged with other hospitals such that the language of the agreement preventing disclosure to third parties did not apply to such other hospitals.  Again, given the straight forward language of the letter agreement, this is not a reasonable inference.  See Felty, 818 F.2d at 1128.  Moreover, the court is concerned with whether republication was natural and probable as a result of Dr. Levinson's actions, not those of Riverside.

Virginia courts apply the "plain meaning rule" in interpreting contracts.  "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself."  Berry v. Klinger, 225 Va. 201, 208 (1983).  Any uncertainty as to the terms of the contract that would permit the court to engage in interpretation to determine the real contract between the parties must appear on the face of the contract itself.  See Video Zone, Inc. v. KF&F Prop. L.C., 267 Va. 621, 626 (2004).

In reviewing the letter agreement reached by Dr. Levinson and Riverside, the court finds no such uncertainty that would permit the foray into speculation based on extrinsic evidence suggested by the plaintiff.  The letter agreement contains no reference to any other parties to the contract other than Dr. Levinson and Riverside.  With respect to the anticipated use of any report prepared by Dr. Levinson, the letter agreement specifically describes that Dr. Levinson's work

43

product "shall . . . be privileged, strictly confidential, and used only for the purposes of the peer review activities of [Riverside][.]"  In view of this unambiguous language regarding the anticipated use of Dr. Levinson's report, the court cannot agree with the plaintiff's argument that the defendant impliedly consented to the republication of his report by Riverside to MIH.  See Berry, 225 Va. at 208.

The court finds that the plaintiff, although inviting the court to look only at the actions taken by Dr. Levinson, attempts to construe the letter agreement in a manner that is not reasonable by reading in inferences that are premised largely on speculation.  Although it is not in dispute that Riverside knew Dr. Meyers had been suspended by MIH and that Dr. Meyers had executed a release for Riverside to disclose peer review information to MIH, the plaintiff's argument that the language in the letter agreement limiting the use of Dr. Levinson's report to the peer review activities of Riverside included provision of the report to MIH constitutes an improper broadening of the terms of the letter agreement.

Accordingly, the court finds that the plaintiff has offered no evidence whatsoever on which a jury could conclude that Dr. Levinson expressly or impliedly authorized republication, in face of the confidentiality clause contained in the letter agreement.  See  Anderson, 477 U.S. at 257 (describing that party seeking to avoid summary judgment must come forward with evidence from which a fact finder might return a verdict in his favor).  Although all reasonable inferences must be made in favor of the plaintiff, such an inference is not reasonable in view of the language of the confidentiality provision that limited the use of Dr. Levinson's report and/or work product to the Riverside peer review process.  See Anderson, 477 U.S. at 249 (noting that party opposing summary judgment must produce probative evidence supporting each element of its claims);

44

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (indicating that

unsupported speculation is not sufficient to defeat summary judgment).  Unsupported speculation

or argument by counsel is not evidence to be considered at summary judgment and does not

create issues of fact.  See  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 62 (4th Cir.

1995) (unsupported speculation); Morrissey, 739 F.2d at 967 (argument of counsel).

    b. Liability for Republication

    As explained above, the originator of defamatory material is also liable for the

republication of that material by a third party if the republication of the defamation was a natural

and probable consequence of the original publication.  See Weaver, 199 Va. at 196.  In

determining whether a factual issue exists as to whether the republication of the report to MIH

was the natural and probable consequence of publication to Riverside, it does appear to the court

that the expectations of the original defamer as to the use of the original publication are the

relevant inquiry.

    Virginia courts have not expressly defined the parameters of the natural and probable

consequence inquiry; however, some courts have described it as akin to a reasonable

foreseeability that the original defamatory publication would be republished by a third party.  See

Midwest Bank Builders, Inc. v. Dun & Bradstreet, Inc., 1978 U.S. Dist. Lexis 17937, at *3 (N.D.

Ill. May 4, 1978) (noting that some courts have interpreted "natural and probable consequence"

as "reasonable forseeability").  Under this objective standard, even if Dr. Levinson did not

contemplate that his report would be republished by Riverside, if it was reasonably forseeable

that Riverside would have done so, Dr. Levinson may yet be liable.

    A real concern with the reasonable foreseeability test is that it does not contemplate the

rule that each republication of a defamation constitutes a separate cause of action that starts the statute of limitation anew.  See id. at *7.  Thus, claims for all foreseeable republication of defamation could result in perpetual liability for a single wrongful act.  Other courts appear to give "natural and probable" a more limited scope based on the original publisher's expectation of further dissemination.  See id. at *4 (citing Weaver, 199 Va. at 201).  It does appear to the court that the natural and probable test supplements the authorization test in cases where the original publisher expected republication of his statement to follow in the ordinary course of events, although he could not actually be said to have authorized the republication.  See id.  at *5; see also Davis v. National Broadcasting Co., 320 F. Supp. 1070, 1072 (E.D. La. 1970) (describing that "[w]here there were circumstances, known to the original defamer at the time of his publication that might reasonably lead him to expect a repetition, he is responsible for it.").

The court notes that the United States District Court for the Northern District of Illinois, in describing Weaver, noted that this decision of the Virginia Supreme Court was among those that provided a more limited scope for the "natural and probable" rule.  See Midwest Bank Builders, 1978 U.S. Dist. Lexis 17937 at *8.   As in Illinois, each republication of a libel in Virginia is a separate tort.  Thus, even considering a more narrow scope to the rule, "a victim still has a remedy against the republisher even if his remedy against the original publisher is cut off." Id.; see also Oberman v. Dun & Bradstreet, Inc., 586 F.2d 1173, 1175 (7th Cir. 1978) (describing that Illinois courts would not hold natural and probable to mean reasonably foreseeable because each republication of a libel constitutes separate cause of action which starts statute of limitations anew, which would result in perpetual liability for single wrongful act).

While recognizing that an original defamer can be held liable for republication, the

46

Virginia Supreme Court has also described that "the original author is not responsible if the republication or repetition is not the natural and probable consequence of his act, but is the independent and unauthorized act of a third party." See Weaver, 199 Va. at 199.  The Weaver court discussed and cited various treatises and authorities concerning libel and slander, one of which noted that "'the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control . . . and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel.'" Id. (quoting Newell, Slander and Libel (4th Ed.) § 303, p.339)).  Although the Weaver court concluded that a jury could conclude that the defendant was liable for republication, this finding was based on the contents of the defamatory letter, which the court believed could have led the jury to believe that the defendants were requesting that the letter be republished to the plaintiff's superiors at a future date or that republication was a natural and probable consequence.  See Weaver, 199 Va. at 201.

The lack of any such expectation in the letter agreement causes the court to conclude that no evidence exists to support a jury determination that the republication of Dr. Levinson's report was the natural and probable consequence of his original publication to Riverside on or about June 27, 2000.  Unlike the defamatory letter in Weaver, which permitted an inference by a jury that further republication was contemplated to the plaintiff's superiors, the unambiguous confidentiality provision of the letter agreement between Riverside and Dr. Levinson produces an inference that any republication to third parties was unauthorized and independent of the letter agreement.  See Weaver, 199 Va. at 201 (noting that original author is not liable for voluntary and unjustifiable repetition).  This is not a case where the letter agreement remained silent on

47

Riverside's use and dissemination of the report.  Were this true, a jury question certainly would

exist as to whether republication was a natural and probable consequence.  In this case, however,

that inquiry is foreclosed by the confidentiality provision of the letter agreement, which, being

clear and unambiguous, is not open to judicial interpretation.  See Berry, 225 Va. at 208.

   The court also finds that the decision of the Fourth Circuit in Blue Ridge Bank v.

Veribanc, Inc., 866 F.2d 681, 683 (4th Cir. 1989), a case discussed by both parties, supports the

proposition that the expectation of future dissemination is a crucial factor in the natural and

probable analysis.  In Blue Ridge, the defendant, a processor and distributor of information

concerning financial institutions, was contacted by a nationally syndicated newspaper columnist,

who inquired about the number and location of banks projected to reach zero equity within a

certain time period.  Blue Ridge, 866 F.2d at 683.  The defendant supplied the columnist with

certain information relating to his inquiry without charge, with the expectation that the defendant

be cited as the source of the information in any article.  By separate cover letter, the defendant

stressed the need for balanced reporting and the need to include various caveats regarding proper

interpretation of the information provided to the columnist.  See id.

   The plaintiff bank was mistakenly included in the information sent to the columnist.  It

was listed as one of 136 banks which could reach zero equity within one year.  The columnist's

article was sent to syndicated newspapers, including the Richmond Times Dispatch, which

substantially edited the article and published it under the title "Possible Bank Flops Listed."  See

id.  The plaintiff bank was listed as one of five banks in a table denominated "A Partial List of

Troubled Banks."  See id.

   There was no dispute as to the error in the plaintiff bank's inclusion in the information

sent to the columnist.  The plaintiff bank claimed to have been libeled by its inclusion in the

defendant's report.  A jury verdict was returned in favor of the plaintiff bank and the defendant

appealed on a number of grounds, one of which was the district court's refusal to instruct the jury

on the law of republication in Virginia.  See id. at 689.  The defendant argued that the article in

the Richmond Times Dispatch was not a republication of the report supplied to the columnist,

nor the natural and probable consequence of its publication.

   After reviewing the republication standard set forth in Weaver, the Fourth Circuit

determined that the defendant could not argue that publication of the article in the Richmond

Times Dispatch was an "improbable or unnatural result of its decision to furnish the List Series

Report" to the columnist.  Id. at 690.  The Fourth Circuit concluded that "[a]lthough Veribanc

[the defendant] cannot be said to have authorized the [Richmond Times Dispatch] article itself, it

is beyond dispute that it authorized the use of the factual statements contained in its report by

Dorfman [the columnist] and those newspapers carrying his column."  Id.

   It is the last portion of this quotation that the court finds instructive.  In Blue Ridge, it was

not disputed that the defendant authorized, or at least expected, that the report provided to the

columnist - the original act of defamatory publication - would be used in additional acts of

republication.  The defendant expected, in fact, to be cited as the source in any forthcoming

article written by the columnist.  See id. at 683.

   This expectation, far from being present in the instant case, is expressly excluded by the

restrictive confidentiality clause in the letter agreement between Dr. Levinson and Riverside,

which provided that Dr. Levinson's report would only be used as part of the Riverside peer

review process.  Given the terms of this agreement and the failure of the plaintiff to identify any

other evidence upon which a jury could find that Dr. Levinson expected his report to be further disseminated outside of the Riverside peer review process, the court cannot find that a reasonable jury could conclude that the republication of Dr. Levinson's report to MIH was the natural and probable consequence of its publication to Riverside.  See Celotex, 477 U.S. at 322 (noting that party opposing summary judgment must make sufficient evidentiary showing on each element of its claims).

The plaintiff contends, however, that Blue Ridge permits the conclusion that although Dr. Levinson did not specifically authorize the republication of his report, his authorization of his report for peer review purposes is the same as the authorization of the defendant in Blue Ridge for its information to be included in a newspaper article.  The flaw in this argument is that the defendant in Blue Ridge was aware and expected its report to be republished beyond the columnist to the newspapers that syndicated his column.  See Blue Ridge at 683.  It is also very noteworthy that the columnist in Blue Ridge had previously written an article based on a report from the defendant, and that the article that was the subject of that case was an update of the prior story.  See id.  Thus, the defendant in Blue Ridge had notice in the form of prior experience that the information it provided to the columnist would end up in an article form in certain syndicated publications.

In the instant case, however, the plaintiff has demonstrated no notice, awareness or expectancy on the part of Dr. Levinson, as opposed to Riverside, that his report would be distributed at all beyond the confines of the Riverside peer review process.  The speculation of the plaintiff that the authorization by Dr. Levinson to use his report for peer review activities extended to republication to MIH is unsupported by any evidence and, in fact, is directly contrary

to the confidentiality clause contained in the letter agreement.  There is no evidence that Dr.

Levinson even knew of, let alone authorized, the republication of his report to MIH.

Accordingly, the court cannot find that the evidence supports a jury question on whether the

republication of his report to MIH was the natural and probable consequence of the original

publication of his report to Riverside.  See Ennis, 53 F.3d at 62 (noting that unsupported

speculation cannot serve to withstand summary judgment).

IV. Conclusion

For the reasons set forth above, the court finds that abstention in this case is not

appropriate.  The state and federal actions are not clearly parallel, and the minor overlap in the

defamatory acts alleged in both cases does not weigh heavily enough to defeat the strong

presumption in favor of retaining jurisdiction.  Accordingly, the defendant's motion to dismiss is

**DENIED**.

The court does find, however, that summary judgment is warranted based on the

application of Virginia's statute of limitations as applied to defamation claims and the standard

of liability of original publishers for the third party republication of defamatory material.  The

dispute underlying the application of the single publication rule is a matter of law, and given the

undisputed facts at hand, the court determines that the distribution of Dr. Levinson's report to the

fair hearing panel relates back to the June 27, 2000 original publication date for the purposes of

the statute of limitations.  Furthermore, in light of the letter agreement between Riverside and Dr.

Levinson that restricted the use of Dr. Levinson's report to the peer review activities occurring at

Riverside, the plaintiff has not carried his burden of coming forward with evidence to show that

an expectation of further dissemination outside Riverside existed, such that a dispute of material

fact exists as to whether the republication of Dr. Levinson's report to MIH was the natural and probable consequence of the original publication.  <u>See</u> <u>Pulliam</u>, 810 F.2d at 1286 (noting that once movant has met burden of showing absence of issue of material fact, non-movant then has burden to establish its existence).  As such, Dr. Levinson cannot be liable for this republication. Thus, the defendant's motion for summary judgment is **GRANTED**.

The Clerk is **REQUESTED** to mail copies of this order to counsel for all parties.

It is so **ORDERED**.

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT  JUDGE

Norfolk, Virginia
July 26th, 2005